IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) No. 01 CR 543-3 |
| SEDGWICK JOHNSON, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Defendants Raymond Cooper ("Cooper"), Kalonji McMillian ("McMillian"), and Sedgwick Johnson ("Johnson"), were each convicted of one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 and two counts of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1). (Dkt. Nos. 82-85). In June 2001, Cooper arranged to sell one kilogram of powder cocaine and one kilogram of crack cocaine to Jason Rauner ("Rauner"). *United States v. Johnson*, Nos. 03-1322, 03-1323 & 03-1477, slip op. at 2 (7th Cir. May 4, 2005). Cooper had supplied Rauner with illegal drugs for several years. *Id.* Rauner set up the purchase as part of his cooperation with the government after Rauner had been arrested in an unrelated case. *Id.* at 1-2. McMillian's role was cooking the cocaine into crack while Johnson's primary responsibility was to deliver the drugs to Rauner.

Johnson was sentenced on January 30, 2005, to 360 months of imprisonment for each of the three counts, to run concurrently. (Dkt. No. 112). At sentencing, Johnson was held responsible for one kilogram of crack cocaine and one kilogram of powder cocaine, giving him an offense level under the United States Sentencing Guidelines ("U.S.S.G.") of 36. (Dkt. No. 193, at 6.) That calculation was irrelevant, however, because Johnson's criminal history made him a career

offender under U.S.S.G. § 4B1.1. Accordingly, Johnson's offense level was 37 and his criminal history category was VI, giving him a Guidelines range of 360 months to life. (Dkt. No. 193, at 7.)

On May 4, 2005, the Seventh Circuit entered a limited remand to allow this court to state whether its sentence would be different if it had known that the sentencing guidelines were advisory under *United States v. Booker*, 543 U.S. 220 (2005). (Dkt. No. 144.) After following the procedures in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), this court responded that it would impose the same sentence. (Dkt. No. 156.)

Subsequently, while the matter was still pending on appeal before the Seventh Circuit and the Supreme Court, in *Kimbrough v. United States*, 552 U.S. 85 (2007), the Supreme Court held that district courts may deviate from the Sentencing Guidelines because of a policy disagreement with the crack/powder disparity contained therein. In addition, *United States v. Corner*, 598 F.3d 411 (7th Cir. 2010) (en banc), established that a district court may also reject the career offender guideline on policy grounds. Accordingly, the Seventh Circuit remanded to this court again to state whether it would impose the same sentence in light of *Kimbrough* and *Corner*, taking into account the full extent of its discretion to deviate from the Sentencing Guidelines. (Dkt. No. 191.)

Both Johnson and the government have submitted their views on the question. (Dkt. Nos. 193 & 195.) Johnson contends first that the court should state that it would impose a different sentence because his sentence was calculated on the basis of the 100-to-1 crack/powder disparity that has been repudiated by the Sentencing Commission. Johnson is correct that the presentence investigation report ("PSR") calculated Johnson's Guidelines range on the basis of the 100-to-1 crack/powder disparity. (PSR at 3-4.) The court did not ultimately use that calculation, however,

2

because Johnson was also a career offender. Johnson's offense level (37) and criminal history category (VI) were thus fixed without regard to the 100-to-1 crack/powder disparity. *See* U.S.S.G. § 4B1.1. The Sentencing Commission's (and for that matter, the court's) views on that disparity are thus irrelevant.

Second, Johnson contends that his limited role in the offense—as a drug courier who was drafted at the last minute—means that the court should give him a lower sentence. The court has already addressed this argument in its order of August 11, 2005, explaining that:

> The court must consider [the] nature and circumstances of the offense but it must also consider the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). . . . Johnson did play a vital role in the drug conspiracy by delivering the drugs. Johnson may not have been the leader of the conspiracy but his act of delivering the drugs was an act that had to occur in order to carry-out the objective of the conspiracy and underlying crimes.

The court's knowledge of the extent of its discretion to depart from the career offender guideline does not change this analysis. Johnson played a crucial role in a serious crime that must be appropriately punished. 18 U.S.C. § 3553(a)(2)(A).

Finally, Johnson contends that he will be 60 years old at his release, past the age of rapidly declining recidivism. As Johnson notes, however, offenders over age 50 have a recidivism rate of 9.5%. (Dkt. No. 195, at 12.) If Johnson were free during his 50s, therefore, he would still have a non-negligible likelihood of recidivism, particularly in light of his prior criminal conduct. The court notes that Johnson had committed four serious felonies prior to his conviction in this case, including burglary, armed robbery, home invasion, and possession of a controlled substance. (PSR at 7-12.) Those felonies show a proclivity for repeated criminal conduct, and also indicate that a

3

stiffer sentence is necessary to sufficiently deter Johnson and other criminals like him from future crime. 18 U.S.C. § 3553(a)(2)(B) & (C). In light of Johnson's repeated criminal conduct, the court finds that the application of the career offender guideline in this case is appropriate, and the court is not inclined to depart from it.

## CONCLUSION

For the reasons stated above, the court informs the Seventh Circuit that it would reimpose the same sentence on defendant Sedgwick Johnson if this case is remanded for resentencing. The court is directed to provide a copy of this order to the Seventh Circuit Court of Appeals.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: June 11, 2013